UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re* Application of GHF General Partner Limited and The GHF Group Limited for an *Ex Parte* Order to Conduct Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782 | Case No. 23-mc-335 (JGLC) |

**DECLARATION OF
PROFESSOR REBECCA INGBER**

I, Rebecca Ingber, pursuant to 28 U.S.C. § 1746, declare as follows:

1.  I am a Professor of Law at Cardozo Law School, with expertise in international law, national security law, foreign relations law, and presidential power. From September 2021 until June 2023, I served as the Counselor on International Law in the Office of the Legal Adviser at the U.S. Department of State (the "State Department"). Prior to that, I served as an Attorney-Adviser at the State Department from November 2006 to August 2011. I am also currently a Co-Director of the Floersheimer Center for Constitutional Democracy, and a senior fellow at the Reiss Center on Law and Security at NYU School of Law. I currently serve as an Adviser to the American Law Institute's Restatement of The Foreign Relations Law of the United States, as a U.S. representative on the roster of experts for the Moscow Mechanism of the Organization for Security and Cooperation in Europe, and on the Advisory Committee on International Law to the U.S. Department of State's Office of the Legal Adviser. I have testified before both the U.S. Senate and House of Representatives on international law and national security issues, currently serve on the board of editors of *Just Security*, and have published extensively on international law issues.

2.  I have read the public version of a Motion to Quash (the "Motion") and accompanying papers filed by Badr Jafar in the above-captioned matter on October 6, 2023. I

have been retained by the GHF Parties to submit a declaration in response to certain issues raised in the Motion. I am being paid $1,100 per hour. My fees are not contingent on the substance of my statements in this declaration or the outcome of the Motion.

3. During my time at the State Department Office of the Legal Adviser, I provided advice on a wide range of international law issues to the Legal Adviser, the State Department, the White House, the Department of Justice, and to other executive branch agencies. The State Department is regularly asked to address questions of immunity, including in consultation with the Department of Justice in litigation in U.S. courts, if and when a person's diplomatic status is the subject of a litigated dispute. For example, "for UN personnel and personnel assigned to a foreign mission to the UN," State Department regulations provide that a foreign mission, an international organization, or law enforcement may at times request from the State Department a "certificate of immunity" with respect to accredited personnel to missions, or advice from the U.S. Mission to the United Nations pertaining to the immunity of U.N. personnel.[1]

4. As the Court is aware, international and federal law provides various forms of immunity to representatives of foreign nations in order allow them to carry out their work without fear of reprisal, for the purposes of promoting orderly international affairs and cooperation between nations. Protecting foreign diplomats from arrest and legal process while present in the United States is intended to promote friendly relations between nations to support their ability to communicate with one another even in fraught circumstances and avoid, among other things, one nation's government punishing individual diplomats located within its borders based on foreign policy disagreements with another nation's government, or using arrest and interrogation to collect intelligence. Immunity is an extraordinary exception to the general rule

---

[1] 2 FAM 234.1, at https://fam.state.gov/FAM/02FAM/02FAM0230.html

that a nation's police powers and its court's legal processes apply to all individuals within its territory whether residents or temporary visitors.

5. During my time at the State Department, I worked on matters involving a wide range of substantive areas of international law, and issues of immunity arose regularly during the course of this work, and in a wide array of circumstances, including in litigation in both federal courts and the International Court of Justice. I traveled regularly on a diplomatic passport (which, to be sure, did not grant me diplomatic immunity) and attended meetings at the U.N. while holding U.N. badges. I traveled on behalf of the U.S. government to participate in meetings and negotiations with foreign states, including contract and treaty negotiations, and at none of these times did I enjoy immunity from legal process.

**A.  United Nations Conferences**

6. The United Nations, its organs, and treaty bodies established under its auspices hold a number of conferences every year. The United Nations General Assembly adopts a draft calendar prepared by the Committee on Conferences. The calendar adopted for 2023 ("2023 U.N. Conference and Meetings Calendar" or the "Calendar") is attached as Exhibit A.[2] The Calendar notes that it also includes as "part of the annex[ed] calendar" conferences convened by "treaty bodies established under the auspices of the United Nations" in addition to "conferences and meetings of the United Nations and of the principal organs of the specialized agencies." In other words, the calendar list of events is broader than "conferences convened by the United Nations."

7. As set forth in the 2023 U.N. Conference and Meetings Calendar, from September 19-29, 2023, the United Nations convened its General Assembly Meeting in New York. There

---

[2] It is also available at
https://documents-dds-ny.un.org/doc/UNDOC/GEN/N23/033/36/PDF/N2303336.pdf?OpenElement.

3

were also a number of other U.N. meetings taking place in September in New York.  Although the U.N. Secretary-General announced that he would be convening the Climate Ambition Summit referenced in the Motion during his end-of-year press conference on December 19, 2022,³ and appears to have done so, it does not appear on the 2023 U.N. Conference and Meetings Calendar.  In any event, Mr. Jafar does not claim to have attended that Summit or been appointed a delegate to it.

8.      I understand from my review of the Motion that Mr. Jafar claims to be a "Special Representative of Business & Philanthropy" to the 28th Conference of the Parties to the U.N. Framework Convention on Climate Change ("UNFCCC"), commonly known as "COP28."  He also claims to hold a position as Chair of the "COP28 Business & Philanthropy Climate Forum," which I understand to be a private sector meeting that will be held in Dubai this December in conjunction with COP28.⁴  COP28 is listed as item 312 on the 2023 U.N. Conference and Meetings Calendar, as taking place in Dubai between November 30 and December 12, 2023.  *See* Ex. A, p. 36.

9.      As noted, "COP" refers to the "conference of the parties" to the climate change convention referenced above, at which all state parties to the Convention are represented; it is convened annually and serves as the decision-making body to that treaty.⁵  COP28 is the upcoming 28th such conference.  The Calendar, which refers to "UNFCCC, Conference of the Parties [COP] to the Convention and meetings of subsidiary bodies" as taking place in Dubai from November 30 through December 12, and includes a footnote reading "[t]reaty body."

---

³ https://www.un.org/sg/en/content/sg/press-encounter/2022-12-19/secretary-generals-end-of-year-press-conference?_gl=1%2A1sev5tz%2A_ga%2AMzY5NzczNjgyLjE2NTM1NTY4MjE.%2A_ga_TK9BQL5X7Z%2A MTY3MTQ3OTAzMy4xMDcuMS4xNjcxNDc5NTMxLjAuMC4w
⁴ https://www.cop28.com/en/bpcf
⁵ https://unfccc.int/process/bodies/supreme-bodies/conference-of-the-parties-cop

Ex. A, p. 43. According to the UAE's host country COP28 website, the "Business & Philanthropy Climate Forum," to which Mr. Jafar asserts he is Chair, is a private sector conference "[h]eld concurrently with the heads of state-level World Climate Action Summit at the beginning of the two-week COP28 program."[6]

10. The COP "presidency" rotates among the state parties, and the UAE holds the "incoming" Presidency. According to the UAE's COP28 website, Dr. Sultan Ahmed al Jaber is the "President-Designate" for COP28.[7]

**B.   The Vienna Convention on Diplomatic Relations**

11. The United States became a party to the Vienna Convention on Diplomatic Relations (VCDR) on November 13, 1972. Article 29 of the VCDR, within the protections of which Mr. Jafar appears to claim he falls, addresses the inviolability of "diplomatic agent[s]." The VCDR defines "diplomatic agent" as "the head of the mission or a member of the diplomatic staff of the mission." VCDR, Article 1(e). I have seen nothing to suggest that Mr. Jafar is a diplomatic agent, nor has he claimed to be a head or member of the diplomatic staff of a mission. Instead, he appears to be asserting that he should receive the treatment reserved for such diplomatic agents by virtue of his argument that he falls within Section 11 of the Convention on the Privileges and Immunities of the United Nations, which I will turn to next.

**C.   The United Nations Privileges and Immunities Convention and Persons Subject to The Convention**

12. The United States became a party to the Convention on the Privileges and Immunities of the United Nations, Feb. 13, 1946, 21 U.S.T. 1418, T.I.A.S. No. 6900 ("U.N. Convention") on April 29, 1970.[8] Section 11 of the U.N. Convention provides certain

---

[6] https://www.cop28.com/en/bpcf
[7] https://www.cop 28.com/en/cop28-presidency
[8] https://treaties.un.org/pages/ViewDetails.aspx?src=TREATY&mtdsg_no=III-1&chapter=3&clang=_en#EndDec

5

immunities to "[r]epresentatives of [United Nations] Members" to (1) "principal organs and subsidiary organs of the United Nations" and (2) to "conferences convened by the United Nations," the further details of which I understand to be interpreted on a case by case basis and negotiated in practice with the host state, including whether a particular conference is covered by this provision. Principal and subsidiary organs of the United Nations include permanent bodies such as the General Assembly, the Security Council, and the International Court of Justice.[9]

13. The term "representative" of a Member as used in the U.N. Convention has a particular meaning. Specifically, Section 16 defines "representatives" to be limited to "delegates, deputy delegates, advisers, technical experts and secretaries of delegations." Under the Convention, only "Representatives of Members to the principal and subsidiary organs of the United Nations and to conferences convened by the United Nations" are entitled to the immunity afforded by the Convention which Mr. Jafar is purporting to invoke in the Motion.

14. From my practice and expertise, I understand "Representatives of Members" in this context to refer to a U.N. member state's credentialed delegates to a U.N. body or to a U.N.-convened conference. I would not understand this definition to extend further to every individual who may travel to attend meetings on the margins of such a conference, or even to attend such a conference itself as a non-delegate attendee. Moreover, only a narrow set of conferences are covered by this provision and may, in conjunction with the host country, involve immunity for the state parties' representatives; most international negotiations and conferences do not.

15. Nor, in my experience, would immunity attach to the large number of governmental, non-governmental, and private individuals who travel to New York during times

---

[9] https://www.un.org/en/model-united-nations/un-structure#:~:text=The%20United%20Nations%20(UN)%20has,The%20Hague%20in%20the%20Netherlands.

when the United Nations General Assembly (or other U.N.-convened conferences) are in session, unless they were to fall within the narrow set of groups granted specific types of immunity, such as Heads of State or "representative of members" or members of the diplomatic staff of a mission as discussed here.  Many individuals seek to avail themselves of the opportunities afforded by the high concentration of political, diplomatic, and business leaders in the city during this time, and may hold or attend formal and informal meetings outside formal U.N. proceedings.  In my time at the State Department (and since), I have never encountered a scenario where a private person, whether or not traveling with a delegation of Member representatives, who was not themselves part of the state delegation, asserted immunity from legal process.  Even if someone could characterize themselves as an "adviser" or "technical expert," or as someone conducting "official business" when attending meetings associated with the U.N., I would not consider such individuals to be Member representatives to a United Nations organ or to a United Nations-convened conference under Section 11 of the Convention—only if they were part of the official delegation.  An extension of immunity beyond the official delegation would be an extraordinary claim, the ramifications of which are extremely slippery, as it could cover a broad swath of private individuals who travel to New York during this period to hold meetings on the margins of the U.N.

16.  As explained in State Department guidance for local law enforcement and judicial authorities, "[t]he purpose of these [diplomatic] privileges and immunities is not to benefit individuals but to ensure the efficient and effective performance of their <u>official</u> missions on behalf of their governments."[10]  This is also reflected in the U.N. Convention, which states that

---

[10] United States Department of State, Diplomatic and Consular Immunity: Guidance for Law Enforcement and Judicial Authorities 2 (1998 rev. ed.) (emphasis added).

"[p]rivileges and immunities are granted to officials in the interests of the United Nations and not for the personal benefit of the individuals themselves."[11]

17.   For diplomats who do hold immunity and engage in malfeasance, the remedies available to the territorial state are primarily based in foreign policy and are addressed state-to-state.  Part of the calculation in this understanding is that the sending state is ultimately responsible for the acts of its diplomats, and the relationship benefits from their reciprocal exchange and reciprocal extension of immunities.  This cost-benefit analysis would break down were immunity to be so casually extended to travelers to the United States on the broad basis that Mr. Jafar seems to assert.  This would constrain the United States' ability to exercise its police powers within its territory, and one can imagine that such a broad extension of immunity could be abused by visitors who might view it as license to act with impunity, or by those who might seek vague titles as a means of traveling freely to the United States without fear of engaging legal process here.

18.   I have reviewed an October 4, 2023, e-mail to Mr. Jafar from Daniel Bergheim, which is signed as the Chief of Staff to the Permanent Representative of the U.N. Mission for the UAE.  I note that the e-mail quite conspicuously refrains from stating that Mr. Jafar was or is part of the UAE delegation to the General Assembly or to any other U.N.-convened conference being held in New York during the month of September.  Instead, it states instead that Mr. Jafar is a "COP28 Special Representative" and declines to represent that he is a delegate of the UAE or of any U.N. Member state to COP28 or to any other conference; certainly it does not state that Mr. Jafar was a delegate to any U.N.-convened conference while he was in New York this past September.  Based on my experience, it would be my expectation that the relevant staff to the

---

[11] U.N. Convention, art. V, § 20.

Permanent Representative of a Mission to the United Nations providing such a representation, and certainly the Chief of Staff having chosen to do so, would have a clear understanding of the status and credentials of the personnel who are attached to or pass through the Mission. This e-mail reads to me as quite precise in its wording, and I noted that Mr. Jafar is said to have attended meetings "in connection with" the U.N. Climate Action Summit, and in his "formal capacity" as a "COP 28 Special Representative" and Chair to the "COP28 Business & Philanthropy Climate Forum." The e-mail appears quite specific in what it does and does not say. I would expect, and the careful language employed by this e-mail further supports, that Mr. Bergheim likely has a crisp understanding of the difference between delegate representatives to the United Nations and those without such status, and that if Mr. Jafar had such status Mr. Bergheim would have clearly stated it. It would strike me as unlikely that a person in Mr. Bergheim's position would have unintentionally failed to mention that Mr. Jafar was part of the UAE delegation to the U.N. General Assembly or any U.N.-convened conference in response to a request to describe Mr. Jafar's official status, particularly given that Mr. Jafar is asserting immunity that would (or at minimum could) rise or fall on the existence of such status.

19.     I also have reviewed an article attached as Exhibit B to my declaration, which appears to come from an official UAE state media source, listing the members of the UAE's official delegation to attend the 78th Session of the United Nations General Assembly, and note that Mr. Jafar is not listed among the official delegates.

20.     I have also considered Mr. Jafar's assertion that he is "the COP28 UAE's Special Representative for Business and Philanthropy and a member of [its] Advisory Committee." Badr Jafar Decl. ¶ 5. I note that certain conferences such as the COP attract the interest and involvement of the private sector in convening on the margins. At times, conference organizers

9

may invite prominent individuals, especially local notables, such as celebrities, businesspeople, and activists, to attend meetings, participate in fora, or serve as "special" representatives of various kinds.[12]  In this case, as noted above, the COP28 website notes that an entire private sector event is happening concurrently with the government meetings, and it is to this event that Mr. Jafar is asserted to be a chair.[13]  He is also claiming to be a special representative to the COP itself.  But he has presented no evidence that he is an official member of a national delegation to the conference of state parties, and I have never encountered a situation in which an individual who was not such a member claimed entitlement to delegation representative immunity (to the extent it would attach to such a conference at all).  I note that the UNFCCC website indicates that "Party" representatives to COP28—that is, the representatives of state parties to the Convention on Climate Change—must supply credentials "issued by the Head of State or Government [or] by the Minister of Foreign Affairs."  A true and correct copy of the material from this website is attached as Exhibit C.  In my experience, this is consistent with state practice, under which it is typical and important for states to notify host states, international organizations, and conferences convened by them of the identity of the credentialed members of their delegations.

21.     Even assuming arguendo for these purposes that Mr. Jafar were to be a delegate to a future conference the circumstances of which would provide immunity for such individuals,[14] I understand that COP28 is not being held until November and December of 2023, in Dubai.  In

---

[12] https://news.un.org/en/story/2015/12/517272
[13] https://www.cop28.com/en/bpcf
[14] As noted above, it is not certain that the COP – as the "conference of the parties" to the U.N. Framework Convention on Climate Change – is itself covered by Section 11 of the Convention, which covers "conferences convened by the United Nations."  U.N. Convention § 11.

fact, the UAE is currently the "incoming" holder of the presidency of COP28 and thus the UAE COP28 website lists Dr. Al Jaber as the "President-Designate."

22. I am not aware of any situation in which an individual has claimed or was granted immunity because he *later* intends to be a formally credentialed delegate to a U.N. conference in another country. Much less am I aware of any situation in which an individual was granted immunity because he had been invited by conference organizers to serve at some point in the future as a "special" representative, advisor, or in some similar goodwill role at a conference, let alone one held in an entirely different country. Neither would I consider such individuals as entitled to immunity. Consider that such an extension of immunity would suggest that a private individual could travel anywhere in the world, take a meeting in advance of a future conference, and assert immunity from legal process during said travels.

23. To the extent Mr. Jafar takes the position that he was "exercising [his] functions" as a future COP28 representative while in New York, I note that granting immunity on this basis would vastly expand the number of individuals entitled to immunity under the U.N. Convention while passing through the United States. Often when an international conference or meeting is held in a particular territorial state, that state is able to invite and send a much larger group to the conference than it would be able to do so if they were traveling abroad. It costs little to do so compared to the travel involved with sending a large delegation abroad and the transaction costs of seeking agreement to their participation and visas from the host state.

24. If individuals could – by attaching themselves to even to a U.N.-convened conference in their home country – then claim immunity any time they traveled outside their home country and participated in meetings with some connection to their future responsibilities as a delegation member (let alone as a private actor attending as a private sector representative),

11

this would expand the scope of immunity under the U.N. Convention far beyond the limited purposes that have traditionally informed grants of immunity for diplomatic representatives. It would be ripe for abuse: a member state would thereby be able to immunize prominent nationals from prosecution or suit in other countries simply by appointing them as some kind of representative to a U.N.-convened conference scheduled for a later date. Such a pretextual use of U.N. Convention immunity would, in my view, cause international friction and undermine faith in the international rule of law, ultimately diluting the strength of these protections for those who actually merit them.

25. I have also reviewed the badges Mr. Jafar has submitted in support of his Motion. While at the State Department, I would not have considered these badges alone evidence that Mr. Jafar enjoys immunity under the U.N. Convention. Indeed, I note that even a diplomatic passport does not suggest that an individual enjoys diplomatic or similar immunity. As I understand it, U.N.-labeled badges are regularly provided to visitors and guests to U.N.-affiliated events. While members of U.N. delegations do have U.N. badges, many recipients of U.N. badges are not U.N. representatives under the terms of the Convention. For example, the U.N. Delegates Handbook provides that certain members of delegations receive a blue pass. However, the handbook further states that "[s]pouses will be issued the same type of pass as the principals."[15] Thus, if Mr. Jafar's wife received a blue pass because she was part of the official UAE delegation to the U.N. General Assembly meeting, Mr. Jafar would presumably have received the same blue pass as her spouse. I would not consider Mr. Jafar to be a member of the state delegation solely because his wife was a member of the delegation and he received a blue

---

[15] U.N. Delegates Handbook, p. 11, available at
https://www.un.org/dgacm/sites/www.un.org.dgacm/files/Documents_Protocol/
delegateshandbookga78_2023english.pdf.

pass on that basis.[16] Moreover, the same handbook notes that credentials for all actual delegates to the UNGA must be signed by the member-state's Head of State or Government or the Minister for Foreign Affairs, and that the names and credentials of all delegates, including "technical advisers" and "experts," must be submitted to the Secretary-General of the U.N.[17] Mr. Jafar has not suggested that any such submission was made on his behalf by the UAE to the Secretary-General.

26.     In short, the information Mr. Jafar has provided does not suggest that he is a member of a diplomatic mission in the United States. Nor does it suggest that he is a member of a delegation to a UN organ or UN-convened meeting in the United States. Therefore, based on my practice and expertise, as well as on my review of such evidence as was proffered in the Motion, I see nothing to suggest that Mr. Jafar is entitled to the immunities granted by Section 11 of the U.N. Convention or Article 29 of the VCDR.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:   October 13, 2023
               New York, New York

*Rebecca Ingber* (signature)

Professor Rebecca Ingber

---

[16] I note that under Section 11(d) of the U.N. Convention, spouses are only afforded "[e]xemption" from "immigration restrictions, aliens registration or national service obligations," and do not enjoy the other Section 11 enumerated privileges and immunities.
[17] U.N. Delegates Handbook, p. 109.